UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DIANA GOODMAN,                                              Civil Action No.:

        Plaintiff,                                      05cv3504

   -against-                                               COMPLAINT

BLANK ROME LLP, MIKE MULLMAN,
individually and as a Partner of Blank Rome, LLP,           **PLAINTIFF HEREBY DEMANDS**
and MANNY ADLER, individually and as a                      **A TRIAL BY JURY**
Partner of Blank Rome, LLP,

        Defendants.
-----------------------------------------------------------X

      Plaintiff, Diana Goodman, by her attorneys, Kaiser Saurborn & Mair, P.C., complains as follows:

**PARTIES, JURISDICTION, AND NATURE OF ACTION**

      1.    Plaintiff, Diana Goodman ("Goodman"), was formerly employed as an attorney by Blank Rome LLP ("Blank Rome").

      2.    Defendant, Blank Rome, is a law firm with its principle offices in Philadelphia, PA.

      3.    Defendant, Mike Mullman, is a partner employed by Blank Rome in its corporate department in New York City.

      4.    Defendant, Manny Adler, is a partner employed by Blank Rome in its corporate department in New York City.

      5.    Venue is properly laid in this county in that the events that are the basis of the legal claims asserted by plaintiff occurred in New York County.

      6.    In this action plaintiff asserts that defendants discriminated against her because of her gender and retaliated against her because she complained of sexual harassment and gender

1

discrimination. This court, pursuant to 28 U.S.C. § 1331, has Federal Question jurisdiction over this action, as plaintiff's claims arise under 28 U.S.C. § 2000 (e). This court also has pendent jurisdiction over plaintiff's New York State and New York City claims asserted pursuant to Executive Law § 296 and New York City Administrative Code § 8-502(a). This lawsuit is commenced within ninety days of plaintiff's receipt of a Notice of Right to Sue from the Equal Employment Opportunity Commission.

## I.

## GOODMAN'S EMPLOYMENT WITH DEFENDANTS

7. Ms. Goodman was first employed by Blank Rome as an attorney on September 13, 2002.

8. Throughout the tenure of her employment, Ms. Goodman was consistently skilled and diligent in her work efforts and regularly received positive feedback regarding her work product.

9. At all relevant times, defendants had an obligation to maintain a working environment free of unlawful discrimination, including but not limited to, discriminatory conduct perpetrated in the workplace by third parties, including firm clients.

## II.

## THE SEXUAL AND GENDER HARASSMENT

10. During the tenure of her employment, Ms. Goodman was subjected to severe and pervasive sexual and gender harassment, perpetrated by both Blank Rome attorneys and firm clients, that substantially interfered with the terms and conditions of her employment and created an intimidating, hostile, and offensive working environment.

11. The sexual and gender harassment of Ms. Goodman by Blank Rome attorneys, included but was not limited to, the following:

    a) Daily use by partners and associates in the corporate department, in Ms. Goodman's presence, of gender derogatory remarks;

    b) The toleration by Blank Rome of sexually harassing conduct by firm clients in Ms. Goodman's presence; and

    c) Hostility and exclusion directed at Ms. Goodman by partners in the corporate department because she is a woman.

12. In a November 4, 2002, meeting, which Ms. Goodman attended, Blank Rome clients engaged in sexually harassing conduct.

13. In attendance at this meeting were James Kaplan and Rich DiStefano, both partners, and James Kreizel and Jay Blau, Blank Rome clients.

14. At this November 4th meeting, the clients discussed prostitutes at length.

15. At this November 4th meeting, Mr. Blau leered at Ms. Goodman and joked that his "member" was tired from overuse and that it had not seen so much action in a long time.

16. As he was leaving the meeting, Mr. Blau stated to Ms. Goodman that he was so happy that he desired to kiss her, to which Ms. Goodman responded that that would not be necessary.

17. Immediately following the meeting, Ms. Goodman complained to both partners who attended the meeting regarding the clients' sexually harassing conduct.

18. Despite this complaint, Blank Rome took no remedial actions of any kind.

19. In July, 2003, during a closing, opposing counsel engaged in an at length discussion concerning Playboy bunnies.

20. Ms. Goodman was so offended by the conduct that during the meeting she e-mailed Donna Branca, Director of Attorney Relations, to advise her of the offensive conduct.

21. Ms. Branca never responded to the e-mail and Blank Rome took no remedial actions of any kind.

22. In October, 2003, Mr. Adler requested that Ms. Goodman go to a client's hotel room to obtain signatures on corporate document.

23. The client was Robert Kassel.

24. Ms. Goodman advised Mr. Adler that she was not comfortable going to the client's hotel room and would prefer to meet the client in the hotel lobby.

25. Mr. Adler, who was on the phone with the client at the time, ignored Ms. Goodman's stated concern and again directed her to go to the client's hotel room.

26. When Ms. Goodman arrived at the hotel room, the client, who had substantial notice that Ms. Goodman was coming, was dressed in a short bathrobe without his pants on.

27. Mr. Kassel intentionally prolonged Ms. Goodman's humiliation by searching for a pen and asking her a variety of questions unrelated to the business at hand.

28. The incident was extremely offensive and humiliating to Ms. Goodman.

29. Upon return to her office at Blank Rome that evening, Ms. Goodman reported the incident to Mr. Adler.

30. Mr. Adler's immediate reaction was to laugh and jokingly inquire, "Well, how short of a bathrobe was it?"

31. The following day Mr. Kassel encountered Ms. Goodman at Blank Rome's New York offices and recounted how he, "fucked with [her] head last night." Mr. Kassel further noted that, "it was so funny to see [her] so embarrassed."

32. Mr. Kassel made these remarks openly and loudly to Elise Adams, a partner, and Matt

Breitman, a senior associate, both of whom responded with laughter.

33. Mr. Kassel, later that day, visited Ms. Goodman in her office and gave her an unsolicited kissed her on her face and inquired to her whether he made her nervous.

34. Mr. Kassel's conduct towards Ms. Goodman at Blank Rome's offices was extremely offensive to her.

### III.

### MS. GOODMAN WAS TREATED DIFFERENTLY AND WORSE THAN HER MALE PEERS

35. Mr. Mullman, the Blank Rome partner responsible for assigning all work to associates in the corporate group, ostracized Ms. Goodman, the only female associate in the corporate group, barely acknowledging her presence at the firm.

36. During the entire tenure of her employment, Ms. Goodman regularly requested additional work assignments from Mr. Mullman.

37. Mr. Mullman rarely responded to any of Ms. Goodman's requests.

38. By contrast, Ms. Goodman's male peers always appeared busy with full plates of work assignments.

39. During meetings, Mr. Mullman would routinely address and engage Ms. Goodman's male peers while turning his back to her, cutting her off when she attempted to contribute, and generally ignoring her.

40. Mr. Mullman excluded Ms. Goodman from social and professional engagements and events that he regularly invited her male peers further limiting her professional growth opportunities.

41. Ms. Goodman complained about this gender discrimination.

42. Despite her complaints, Blank Rome took no remedial actions of any kind.

43. Upon information and belief, Blank Rome's New York corporate department has engaged in a pattern and practice of gender discrimination against both administrative and professional female staff members.

IV.

## BLANK ROME FAILS TO CONDUCT A GOOD FAITH INVESTIGATION INTO MS. GOODMAN'S DISCRIMINATION COMPLAINTS

44. On October 1, 2003, Mr. Blondman, an employment partner in the D.C. office of Blank Rome, contacted Ms. Goodman to discuss her complaints.

45. He told her that he would have to, "think things over," and would get back to her.

46. Mr. Blondman scheduled a meeting for October 21, 2003 in New York with Ms. Goodman to further discuss her concerns.

47. Mr. Blondman failed to attend the scheduled meeting without ever notifying Ms. Goodman that he did not plan to attend.

48. When Ms. Goodman inquired as to why he did not attend the meeting, he responded by e-mail that he would re-schedule for later in the week.

49. Ultimately, the meeting attended by Ms. Goodman and Mr. Blondman did not occur until November 11, 2003.

50. Mr. Blondman indicated at the meeting that the conduct Ms. Goodman had complained of was shameful. He did not, however, propose any remedial course of action.

51. Despite Ms. Goodman's repeated complaints Blank Rome performed only the most superficial of investigations and took no remedial actions of any kind to address any of her

discrimination complaints.

## V.

## BLANK ROME'S RETALIATION AGAINST MS. GOODMAN

52.     Comments made to Ms. Goodman by both associates and partners made clear that her discrimination complaints were common knowledge within the corporate department.

53.     For example, at a November 13, 2003 meeting Mr. Adler commented that her hair looked nice and then stated, "No, I am not allowed to say your hair looks nice because that would be sexual harassment." Donna Branca, Director of Attorney Relations, Kim Lipa Attorney Recruiting coordinator, and Joyce Keeyne, Director of Professional Development and Training, all heard the comment, laughed awkwardly, and then quickly dispersed.

54.     Prior to Ms. Goodman's formal complaints, at an informal review of her work performance, Mr. Mullman indicated to Ms. Goodman that her work product was generally perceived to be satisfactory. He further noted that Ms. Goodman's low billables were in part the firm's fault for not utilizing Ms. Goodman more fully.

55.     After Ms. Goodman's formal discrimination complaints, her formal review was decidedly worst than her informal review.

56.     On January 19, 2004, Ms. Goodman's attorney sent a letter to Blank Rome's Chairman, David Girard-DiCarlo, regarding her discrimination complaint.

57.     On January 26, 2004, Mr. Blondman called Ms. Goodman's attorney to advise him that Ms. Goodman was going to be terminated.

58.     Contrary to firm practice, Ms. Goodman was provided no notice of her termination,

no opportunity to review the formal review, no opportunity to find new employment, and no severance.

59. Ms. Goodman was discharged for complaining of gender discrimination.

60. Defendants discriminated and retaliated against Ms. Goodman maliciously and/or in reckless disregard of her civil rights.

## FIRST CAUSE OF ACTION

61. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "60" as if incorporated and realleged herein.

62. Defendants discriminated against plaintiff because of her gender and retaliated against her for complaining of gender discrimination.

63. By reason thereof, defendant, Blank Rome, had violated 42 U.S.C. § 2000 (e), and plaintiff has been damaged in an amount to be determined at trial, including but not limited to, economic damages and emotional injuries.

64. By reason thereof, defendant has violated Executive Law § 296, et seq., and plaintiff has been damaged in an amount to be determined at trial, including but not limited to, economic damages and emotional injuries.

## SECOND CAUSE OF ACTION

65. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "60" and "62" as if incorporated and realleged herein.

66. By reason thereof, defendants have violated New York City Administrative Code § 8-502 (a), et seq., and plaintiff has been damaged in an amount to be determined at trial, including but not limited to, economic damages and emotional injuries.

## THIRD CAUSE OF ACTION

67. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "60," "62 " and "66" as if incorporated and realleged herein.

68. By reason thereof, defendants have violated Executive Law § 296 and plaintiff has been damaged in an amount to be determined at trial, including but not limited to, economic damages and emotional injuries.

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

(i) On the First Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(ii) On the Second Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(iii) On the Third Cause of Action assessing compensatory damages in an amount to be determined at trial;

(iv) Attorney's fees and disbursements; and

(iv) For such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff Hereby Demands a Trial by Jury.

Dated: New York, New York
       March 31, 2005

**KAISER SAURBORN & MAIR, P.C.**

By:_____
   Daniel J. Kaiser, Esq.  [DK-9387]

Daniel J. Kaiser, Esq.
Attorneys for Plaintiff
20 Exchange Pl., 43rd Fl.
New York, New York 10005
(212) 338-9100